[No. 4492–1.   Division One.   March 21, 1977.]

THE STATE OF WASHINGTON, *Appellant,* v. GEORGE
WARREN WILLIAMS, *Respondent.*

*Christopher T. Bayley, Prosecuting Attorney,* and *Charles S. Hamilton III, Deputy,* for appellant.

*John A. Strait,* for respondent.

JAMES, J.—Defendant George Warren Williams was charged with two counts of possessing the drug Ritalin in violation of the Uniform Controlled Substances Act. At the hearing on his motion to suppress evidence, the trial judge ruled that Ritalin found on Williams' person was seized unlawfully. The charges were dismissed. The State appeals as authorized by CAROA 14(8)(5).[1]

The questioned search was made after the police had obtained a search warrant. The preamble to the warrant stated that there was probable cause to believe that evidence material to a violation of the Uniform Controlled Substances Act "is presently concealed in, about and upon 207 9th Ave #119 Seattle King County Washington and the person of George Williams if he be located therein." The warrant did not, however, in specific words, authorize a search of Williams' person. Its command to the police was

---

[1] Now RAP 2.2(b)(1), effective July 1, 1976.

to enter and search the above–described place or premises, and to there search diligently for the following evidence: ritalin and other controlled substances; together with items commonly used in the packaging and sale of narcotics and dangerous drugs; papers and records indicating control or domain over the above listed premises.

Undisputed evidence supports the trial judge's findings

[t]hat the police in execution of the warrant were admitted onto the premises by George Williams, that they gave him a copy of the warrant and that at that time he was searched; that a container was found in his sock containing 13 tablets [of ritalin].

Finding of fact No. 5;

[t]hat thereafter Williams was placed formally under arrest and his residence was searched.

Finding of fact No. 6. The trial judge also found that the police acted in good faith and believed that they had a lawful right to search Williams' person.

Williams was booked into jail but later was released as no charges had yet been filed.

Approximately 2 weeks following the search, the State filed an information charging him with possession of Ritalin. About 1 month later, police served him with an arrest warrant. During a routine booking search, police discovered three more tablets of Ritalin. The information was amended to include a second count of possession.

The trial judge concluded:

That the affidavit for the search warrant in question demonstrated probable cause for the search of the premises and person of Mr. Williams;

Conclusion of law No. 1.

That at the time of the initial search of Williams the Seattle Police officers had probable cause to make an arrest of him;

Conclusion of law No. 2.

That the language of the warrant did not command or authorize a search of the person of Williams and that

therefore the search of his person was beyond the scope of the warrant and unlawful;

Conclusion of law No. 3.

That at the time of the initial search the police had failed to procure an arrest warrant and demonstrated no exigent circumstances to justify their failure to do so; that therefore the state's alternative theory, that the search may be sustained as incident to a warrantless arrest, cannot prevail;

Conclusion of law No. 4. Finally, the judge ruled that the tablets found during the second search were also inadmissible since they were discovered as a "result of the initial unlawful seizure." Conclusion of law No. 5.

We reverse. We hold that the search of Williams was authorized by the search warrant and was, therefore, not unreasonable. We also hold that the search was lawful as incident to a valid warrantless arrest.

■■ The constitutional "right" afforded all, including those suspected of crime, is immunity from "*unreasonable* searches and seizures." (Italics ours.) U.S. Const. amend. 4. A search which is authorized by a warrant issued by a judicial officer upon a showing of probable cause is not unreasonable. However, an officer will be held to strict compliance with the authority granted by a search warrant. The general rule is stated in 68 Am. Jur. 2d *Searches and Seizures* § 107, at 761 (1973):

Although it would appear that a search made under the authority of a search warrant may extend to whatever is covered by the warrant's description, provided that such description meets the requirement of particularity, the Fourth Amendment confines an officer executing a search warrant strictly within the bounds set by the warrant, . . .

(Footnotes omitted.) But in judging an officer's conduct in executing a search warrant, courts should not employ hypertechnical analysis with resulting "absurd results." *United States v. Hall*, 488 F.2d 193, 198 (9th Cir. 1973).

The warrant here in question recited that the magistrate found probable cause to believe that drugs would be found

in Williams' apartment *and* upon his person if he was present. The warrant commanded the officer "to enter and search the . . . premises, and to there search diligently" for Ritalin and other drugs. The affidavit in support of the application for the search warrant was prepared by one of the arresting officers. It stated that within the past 6 hours, a reliable informant had witnessed Williams engaged in a narcotics transaction and had observed that Williams carried a quantity of Ritalin in his pants pocket. Unquestionably, the affidavit established probable cause to specifically authorize a search of Williams' person. Nothing suggests that the warrant's lack of specific authorization to search Williams was anything but an oversight. Under these circumstances, the arresting officer reasonably acted within the scope of a sufficiently specific search warrant. We are aware that in *Tacoma v. Mundell,* 6 Wn. App. 673, 677, 495 P.2d 682 (1972), it is stated that "[a] specific warrant to search a premises cannot be converted into a general one to search individuals." We also recognize that in *State v. Eisele,* 9 Wn. App. 174, 176, 511 P.2d 1368 (1973), it is stated that "[w]hether the particular object desired to be seized is not described in the warrant because of police deceit or through oversight, mistake or carelessness is of no consequence."

While we have no criticism of the result reached in either *Mundell* or *Eisele,* we cannot accept Williams' contention that we should be impelled by the broad generalizations which we have quoted to hold that the search of Williams' person was not authorized by the warrant. In *Mundell,* neither the affidavit nor "[t]he warrant, . . . mentioned [any] individuals (either by name or 'John Doe') . . ."' *Tacoma v. Mundell, supra* at 674. In *Eisele,* the warrant authorized only a search for a specific drug for which no "probable cause" had been shown in the affidavit. As above related, in this case, the affidavit for the search warrant detailed the evidence upon which the officer based his belief that drugs would be found in the apartment "and the person of George Williams if he be located therein." The

warrant commanded the officer "to enter and search the . . . premises . . ." Additionally, the warrant commanded the officer to "search diligently" for drugs. Reason and common sense dictate that under the circumstances, the officer was justified in reading the warrant as a judicial authorization to search Willams' person if he was in his apartment at the time of the search.

At trial, the State contended that the search was also justified as incident to a valid warrantless arrest. We agree.

■ As revealed by the affidavit for the search warrant, the totality of the facts and circumstances within the knowledge of the arresting officer would establish probable cause to believe that Williams had committed and was in the act of committing the felony of possessing controlled substances. The trial judge properly concluded that the officers "had probable cause to make an arrest of him." Conclusion of law No. 2.

> In order to be justified in arresting without a warrant, an officer must believe and must have good reason to believe that a person has committed or is about to commit or is in the act of committing a felony. Not only must the officer have a real belief that the person is guilty, but that belief must be based upon reasonable grounds. Proper cause for arrest has often been defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty.

*State v. Todd,* 78 Wn.2d 362, 365, 474 P.2d 542 (1970). *Accord, State v. Cottrell,* 86 Wn.2d 130, 542 P.2d 771 (1975).

However, as disclosed by conclusion of law No. 4 quoted above, the trial judge was persuaded that no exigent circumstances justified the failure of the arresting officer to obtain an arrest warrant. In reaching this conclusion, the trial judge may have relied upon *United States v. Watson,* 504 F.2d 849 (9th Cir. 1974). A divided court there held that even though postal officers had probable cause to arrest Watson for possession of stolen mail, a felony, their arrest of Watson was invalid because the officers had failed

to obtain an arrest warrant when they had ample time to do so.

Subsequent to the trial judge's ruling in this case, the United States Supreme Court reversed the decision of the Court of Appeals in *Watson*. In reversing, the court held that a daytime "warrantless public [arrest] on probable cause" was lawful and that it was immaterial that there were no exigent circumstances or that the officers concededly could have first obtained an arrest warrant. *United States v. Watson*, 423 U.S. 411, 423, 46 L. Ed. 2d 598, 96 S. Ct. 820 (1976). In his concurring opinion, Justice Powell points out that historical and policy reasons have impelled the Supreme Court to sustain warrantless arrests upon probable cause "despite the resulting divergence between the constitutional rule governing searches and that now held applicable to seizures of the person." *United States v. Watson, supra* at 432 (Powell, J., concurring).

Williams contends, however, that the holding in *Watson* should not be relied upon to justify his warrantless arrest. He argues that a critical distinction between his arrest and the arrest in *Watson* is the fact that Watson was arrested in a public place where he was not constitutionally clothed with the right to be secure against unreasonable searches and seizures. U.S. Const. amend. 4.

Williams points out that two of the concurring justices in *Watson* made it clear that the case does not "consider or decide whether or under what circumstances an officer lawfully may make a warrantless arrest in a private home or other place where the person has a reasonable expectation of privacy." (Footnote omitted.) *United States v. Watson, supra* at 432–33 (Powell, J., concurring).

█ We are persuaded and therefore hold that where, as in this case, officers are lawfully in a private home pursuant to a search warrant, they may make a warrantless probable cause arrest even though there are no exigent circumstances. We believe that when an officer has sought and obtained a magistrate's disinterested determination that a suspect's right of privacy must reasonably yield to a law

officer's need to search in a private home, it would be unreasonable to require either an arrest warrant or a showing of exigent circumstances to justify a warrantless arrest upon probable cause.

Reversed.

FARRIS, C.J., and SWANSON, J., concur.

Petition for rehearing denied June 15, 1977.

Review granted by Supreme Court January 23, 1978.