[No. 57937-7. En Banc. August 20, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. FRANK PERRONE, *Petitioner*.

540

*MacDonald, Hoague & Bayless, Timothy K. Ford,* and *Katrin E. Frank,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Timothy Michael Blood, Senior Deputy,* for respondent.

BRACHTENBACH, J. — In this case involving prosecution for possession of child pornography, we uphold the trial court's ruling that a search warrant for defendant's residence is overly broad in its entirety. We reverse the Court of Appeals.

Defendant was charged with one count of dealing in depictions of minors engaged in sexually explicit conduct, RCW 9.68A.050(2), and one count of possession of depictions of minors engaged in sexually explicit conduct, RCW 9.68A-.070. The charges were based on evidence seized from defendant's condominium pursuant to a search warrant, the validity of which is at issue here.

In March 1988, a Seattle Police Department vice detective received a phone call from an Oakland, California, police officer who advised that he had obtained a mailing list of pedophiles, which had defendant's name on it. An undercover Oakland officer arranged with defendant to meet in California, after defendant returned from a trip to Seattle where he was to pick up adult and child pornographic films. Defendant wanted the films transferred to VHS tapes.

In Oakland, on September 6, 1988, defendant delivered 82 films to the Oakland undercover officer for copying. Several of the films showed children involved in sexually explicit acts. Defendant indicated to the undercover officer that he had more films "like those" in Seattle and that he shared his films with other "collectors". When the officer asked defendant if he had any VHS cassettes of "kiddie porn" that the officer could copy, defendant said that his California and Seattle library of VHS cassettes could keep the officer "busy for a lifetime". The Oakland undercover officer obtained a search warrant to search defendant's car in California.

In Seattle, in a coordinated effort with the California operation, the Seattle vice detective obtained the search warrant in question here. The warrant was drafted and executed by the vice detective, who determined what items

to seize pursuant to the warrant. The warrant was based on her affidavit, which incorporated by reference the California warrant. These materials were submitted to a Seattle Municipal Court judge, along with a copy of the California affidavit in support of the California warrant. In the California affidavit, the Oakland undercover officer said that he and another officer had reviewed 17 of the 82 films obtained from defendant. He provided a description of nine of the films. Five showed children in sexually explicit activity and four showed adult females involved in sexual bestiality. The issuing magistrate considered all the materials submitted to him, but did not discuss with the Seattle vice detective the existence of probable cause or the scope of the warrant.

The Seattle search warrant authorized seizure of the following items:

> Child or adult pornography; photographs, movies, slides, video tapes, magazines or drawings of children or adults engaged in sexual activities or sexually suggestive poses; correspondence with other persons interested in child pornography, phone books, phone registers, correspondence or papers with names, addresses, phone numbers which tend to identify any juvenile; camera equipment, video equipment, sexual paraphernalia; records of safe deposit boxes, storage facilities; computer hardware and software, used to store mailing list information or other information on juveniles; papers of dominion and control establishing the identity of the person in control of the premise; any correspondence or papers which tend to identify other pedophiles.

Exhibit 10.

On September 16, 1988, the Seattle vice detective served the search warrant on defendant's Seattle residence. One hundred ninety-seven films were seized, along with numerous magazines, books and projection equipment. Review of 86 of the films[1] indicated some of them depicted children under the age of 16 engaged in sexual conduct. Twelve of the magazines seized depicted minors in sexual acts.

---

[1] At the time defendant was charged, 86 films had been reviewed; the rest were not reviewed until later after a temporary restraining order obtained by defendant was lifted.

The trial court granted defendant's pretrial motion to suppress all the evidence seized. The trial court concluded, and defendant does not challenge the conclusion, that there was probable cause for the seizure of child pornography. The trial court further concluded, however, that "[t]he materials submitted provided no probable cause for the seizure of adult pornography, drawings of children, and some of the other items described in the warrant." Conclusion of law 1. The court concluded the warrant was overbroad in that it authorized seizure of items for which there was no probable cause to search and it authorized seizure of lawful items. The trial court also concluded that some of the descriptions of items in the warrant were insufficient.

The trial court concluded that the warrant granted the officers executing the warrant too much discretion as to what to seize. The court held that the warrant was invalid in its totality and all the items seized pursuant to the warrant must be suppressed. The court concluded that "[t]he suppression of all the items seized under the search warrant practically terminates this prosecution on both counts." Conclusion of law 6.

The State appealed, arguing that defective language in the warrant should have been excised, and that the remaining language was sufficiently particular to satisfy the Fourth Amendment. A majority of the Court of Appeals panel agreed with the State that language in the warrant authorizing seizure of depictions of "children . . . engaged in sexual activities" was valid and was severable from the rest of the warrant. *State v. Perrone*, 59 Wn. App. 687, 689, 800 P.2d 1132 (1990), *review granted*, 116 Wn.2d 1017 (1991). Judge Forrest dissented.

Defendant sought discretionary review by this court, which was granted. Defendant maintains that the warrant lacked sufficient particularity to satisfy the Fourth Amendment, and that severance of invalid language in the warrant should not be permitted in light of First Amendment considerations.

As noted, the trial court concluded that seizure of many of the items described by the search warrant was not supported by probable cause, as well as concluding that the warrant lacked particularity. As explained below, the probable cause question is closely intertwined with the particularity requirement.

■ The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and *particularly describing* the place to be searched, and the persons or *things to be seized.*" (Italics ours.) U.S. Const. amend. 4. The purposes of the search warrant particularity requirement are the prevention of general searches, prevention of the seizure of objects on the mistaken assumption that they fall within the issuing magistrate's authorization, and prevention of the issuance of warrants on loose, vague, or doubtful bases of fact. 2 W. LaFave, *Search and Seizure* § 4.6(a), at 234-36 (2d ed. 1987) (citing *Marron v. United States*, 275 U.S. 192, 72 L. Ed. 231, 48 S. Ct. 74 (1927); *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 75 L. Ed. 374, 51 S. Ct. 153 (1931)).

■ As to prevention of general searches, "the specific evil is the 'general warrant' abhorred by the colonists . . .." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 29 L. Ed. 2d 564, 91 S. Ct. 2022, *reh'g denied*, 404 U.S. 874, 30 L. Ed. 2d 120, 92 S. Ct. 26 (1971).

> General warrants, of course, are prohibited by the Fourth Amendment. "[T]he problem [posed by the general warrant] is not that of intrusion *per se*, but of a general, exploratory rummaging in a person's belongings. . . . [The Fourth Amendment addresses the problem] by requiring a 'particular description' of the things to be seized."

*Andresen v. Maryland*, 427 U.S. 463, 480, 49 L. Ed. 2d 627, 96 S. Ct. 2737 (1976) (quoting *Coolidge*, at 467); *see also Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 60 L. Ed. 2d 920, 99 S. Ct. 2319 (1979).

> [A]n intrusion upon the occupant's expectation of privacy in those premises should extend no further than is necessary to find particular objects, and this is reflected in the rule that the

described premises may only be searched as long and as intensely as is reasonable to find the things described in the warrant.

(Footnote omitted.) 2 W. LaFave § 4.6(a), at 235.

■ As to the second purpose underlying the particularity requirement, conformance with the requirement eliminates the danger of unlimited discretion in the executing officer's determination of what to seize. *United States v. Blakeney*, 942 F.2d 1001, 1026 (6th Cir.), *certs. denied*, ___ U.S. ___, 116 L. Ed. 2d 663, 112 S. Ct. 646 (1991) and ___ U.S. ___, 116 L. Ed. 2d 785, 112 S. Ct. 881 (1992); *State v. Gronlund*, 356 N.W.2d 144, 146 (N.D. 1984) (particularity requirement eliminates chances that executing officer will exceed the permissible scope of the search because of confusion or uncertainty).

■ *Marron* states that "[a]s to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron*, at 196. However, this statement is not read literally, because to do so would mean that an officer could never seize anything which is not specifically named in the warrant. 2 W. LaFave § 4.6(a), at 234. Instead, "[t]he warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized." *United States v. Cook*, 657 F.2d 730, 733 (5th Cir. 1981) (citing *Steele v. United States*, 267 U.S. 498, 503-04, 69 L. Ed. 757, 45 S. Ct. 414 (1925)); *see State v. Trasvina*, 16 Wn. App. 519, 522, 557 P.2d 368 (1976), *review denied*, 88 Wn.2d 1017 (1977).

In general, the degree of specificity required varies according to the circumstances and the type of items involved. *United States v. Krasaway*, 881 F.2d 550, 553 (8th Cir. 1989). As the Court of Appeals has observed:

> The fourth amendment to the United States Constitution requires that a search warrant describe with particularity the place to be searched and the person or things to be seized. The requirements of particularity are met if the substance to be seized is described with "reasonable particularity" which, in turn, is to be evaluated in light of "the rules of practicality, necessity and common sense." *State v. Withers*, 8 Wn. App.

123, 126, 504 P.2d 1151 (1972). *See United States v. Ventresca*, 380 U.S. 102, 108, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965).

Accordingly, the degree of particularity required will depend on the nature of the materials sought and the circumstances of each case. *State v. Helmka*, 86 Wn.2d 91, 93, 542 P.2d 115 (1975); *State v. Salinas*, 18 Wn. App. 455, 459, 569 P.2d 75 (1977).

*State v. Olson*, 32 Wn. App. 555, 557, 648 P.2d 476 (1982). Thus, where most search warrants are concerned, a description is valid if it is as specific as the circumstances and the nature of the activity under investigation permit. *United States v. Blum*, 753 F.2d 999, 1001 (11th Cir. 1985); *see State v. Christiansen*, 40 Wn. App. 249, 254, 698 P.2d 1059 (1985) (search warrant for marijuana; "reasonable particularity" required to limit discretion of officers executing warrant). Accordingly, the use of a generic term or a general description is not per se a violation of the particularity requirement. *Blakeney*, at 1027. Rather, where the precise identity of goods cannot be determined when the warrant is issued, a generic or general description may be sufficient, if probable cause is shown and a more specific description is impossible. *Krasaway*, at 553; *People v. Smith*, 180 Cal. App. 3d 72, 89, 225 Cal. Rptr. 348, 358 (1986). Conversely, courts have reasoned that the use of a generic term or general description is constitutionally acceptable only when a more particular description of the items to be seized is not available at the time the warrant issues. *State v. Noll*, 116 Wis. 2d 443, 451, 343 N.W.2d 391, 395, *cert. denied*, 469 U.S. 837 (1984); *Smith*, at 89; *Cook*, at 733.

■ Where a search warrant authorizing a search for materials protected by the First Amendment is concerned, the degree of particularity demanded is greater than in the case where the materials sought are not protected by the First Amendment. In *Stanford v. Texas*, 379 U.S. 476, 13 L. Ed. 2d 431, 85 S. Ct. 506 (1965), the Court reviewed the history of general warrants and "the battle for individual liberty and privacy", *Stanford*, at 483, and then stated:

> In short, what this history indispensably teaches is that the constitutional requirement that warrants must particularly

describe the "things to be seized" is to be accorded the most scrupulous exactitude when the "things" are books, and the basis for their seizure is the ideas which they contain. . . . No less a standard could be faithful to First Amendment freedoms.

(Footnote and citations omitted.) *Stanford*, at 485; *see State v. J-R Distribs., Inc.*, 111 Wn.2d 764, 774, 765 P.2d 281 (1988); *Walthall v. State*, 594 S.W.2d 74, 78, 32 A.L.R.4th 364 (Tex. Crim. App. 1980); compare *United States v. Truglio*, 731 F.2d 1123, 1127 (4th Cir.) (where items without First Amendment protection, there need not be an extremely stringent test of specificity), *cert. denied*, 469 U.S. 862 (1984); *United States v. Espinoza*, 641 F.2d 153 (4th Cir.) (books which are merely ledgers of unlawful enterprise not subject to standard applied to materials protected by the First Amendment), *cert. denied*, 454 U.S. 841 (1981).

"[W]hen such objects as books or films are to be seized because of the ideas which are expressed therein, the Fourth Amendment requirement of particularity in the description of the items to be seized takes on special importance." (Footnote omitted.) 2 W. LaFave, *Search and Seizure* § 4.6(e), at 255 (2d ed. 1987).

■ The third purpose identified as underlying the particularity requirement is the prevention of warrants issued on loose, vague, or doubtful bases of fact. The particularity requirement is thus tied to the probable cause determination. 2 W. LaFave § 4.6(a), at 236. "It must be probable (i) that the described items are connected with criminal activity, and (ii) that they are to be found in the place to be searched." 2 W. LaFave § 4.6(a), at 236. The particularity requirement is involved because "[t]he less precise the description of the things to be seized, the more likely it will be that either or both of those probabilities has not been established." (Footnote omitted.) 2 W. LaFave § 4.6(a), at 236; *see, e.g., United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986) (identifying existence of probable cause to seize all items of a certain type described in the warrant as one measure of sufficiency of description of items to be seized); *United States v. Stubbs*, 873 F.2d 210 (9th Cir. 1989)

(search warrant simply described broad classes of documents relating to defendant's real estate business; affidavit did not provide probable cause for reasonable belief that tax evasion permeated entire real estate business; warrant defective in that it failed to provide objective standards by which executing officer could determine what could be seized); *see also United States v. Christine*, 687 F.2d 749, 758, 69 A.L.R. Fed. 503 (3d Cir. 1982) (particularity and probable cause requirements are inextricably intertwined).

■ ■ With these principles in mind, we evaluate the warrant at issue. Whether a search warrant contains a sufficiently particularized description is reviewed de novo. *Spilotro*, at 963; *United States v. McClintock*, 748 F.2d 1278, 1282 (9th Cir. 1984), *cert. denied*, 474 U.S. 822 (1985); *People v. Smith, supra* at 358. Search warrants are to be tested and interpreted in a commonsense, practical manner, rather than in a hypertechnical sense. *See United States v. Turner*, 770 F.2d 1508, 1510 (9th Cir. 1985), *cert. denied*, 475 U.S. 1026 (1986).

Here, the contents of books, films, and other materials sought under the warrant concern child pornography. In *New York v. Ferber*, 458 U.S. 747, 73 L. Ed. 2d 1113, 102 S. Ct. 3348 (1982), the Court explained that child pornography is not protected by the First Amendment because "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *Ferber*, at 757. However, child pornography is not identified by the same standard which determines what is obscene. *See Miller v. California*, 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607, *reh'g denied*, 414 U.S. 881, 38 L. Ed. 2d 128, 94 S. Ct. 26 (1973). Instead,

> the nature of the harm to be combated requires that the state offense be limited to works that *visually* depict sexual conduct by children below a specified age. The category of "sexual conduct" proscribed must also be suitably limited and described.

(Footnote omitted.) *Ferber*, at 764. Criminal responsibility requires scienter on the part of the defendant. *Ferber*, at 765.

■ However, while the Court held that child pornography is not protected by the First Amendment, that is not to say that any search warrant having as its object the seizure of child pornography escapes the mandate that the particularity requirement be followed with "scrupulous exactitude". Books, films, and the like are *presumptively* protected by the First Amendment where their content is the basis for seizure. *See Fort Wayne Books, Inc. v. Indiana,* 489 U.S. 46, 103 L. Ed. 2d 34, 109 S. Ct. 916 (1989) (allegedly obscene videotapes presumptively protected by First Amendment). In *United States v. Hale,* 784 F.2d 1465, 1469 (9th Cir.), *cert. denied,* 479 U.S. 829 (1986), the court said that the fact that child pornography is not protected by the First Amendment is irrelevant in addressing the particularity requirement. The court reasoned that child pornography, like obscenity, is expression presumptively protected by the First Amendment. The court applied the higher procedural standard of "scrupulous exactitude", and concluded that the warrant insufficiently described a magazine which was seized. *Hale,* at 1469. Only an after-the-fact judicial determination can conclusively establish the nature of such materials as "child pornography". *Cf. In re Search of Kitty's East,* 905 F.2d 1367, 1371 n.3 (10th Cir. 1990) (obscenity not protected speech, but no conclusive judicial determination of obscenity of seized videotapes, First Amendment protections apply).

Defendant was charged with dealing in depictions of minors engaged in sexually explicit conduct, RCW 9.68A-.050(2), and with possession of depictions of minors engaged in sexually explicit conduct, RCW 9.68A.070. Under the versions of these statutes in effect when defendant was charged, "minor" meant a person under the age of 16 years. *See* Laws of 1984, ch. 262, §§ 3, 5. "Sexually explicit conduct" was defined as actual or simulated: sexual intercourse; penetration of the vagina or rectum by any object; masturbation for the sexual stimulation of the viewer; sadomasochistic abuse for the sexual stimulation of the viewer; exhibition of the genitals or unclothed pubic or rectal areas of any minor for the sexual stimulation of the

viewer; defecation or urination for the sexual stimulation of the viewer; and the touching of a person's clothed or unclothed genitals, pubic area, buttocks, or breast area for the sexual stimulation of the viewer. Former RCW 9.68A-.011; *see* Laws of 1984, ch. 262, § 2.[2]

As noted above, the probable cause determination is relevant to the inquiry into the sufficiency of the descriptions in the search warrant. "Probable cause is established in an affidavit supporting a search warrant by setting forth facts sufficient for a reasonable person to conclude the defendant probably is involved in criminal activity." *State v. Huft*, 106 Wn.2d 206, 209, 720 P.2d 838 (1986); *State v. J-R Distribs., Inc.*, 111 Wn.2d 764, 774, 765 P.2d 281 (1988). The probable cause determination involves a point of law, and a concession as to the lack of probable cause is not binding on this court. *State v. Knighten*, 109 Wn.2d 896, 901-02, 748 P.2d 1118 (1988).

The State concedes that there was no probable cause to search for adult pornography, pornographic drawings, and sexual paraphernalia. These particular concessions appear appropriate. In this state, distributing or publicly displaying "lewd" material, *i.e.*, obscene material, is illegal. *See* RCW 7.48A. However, possession of obscenity (not child pornography) in the home is protected under the First Amendment. *Stanley v. Georgia*, 394 U.S. 557, 22 L. Ed. 2d 542, 89 S. Ct. 1243 (1969). Further, possession of adult pornography is not illegal under Washington law. Thus, facts indicating defendant possessed adult pornography do not establish probable cause that defendant committed a crime. Similarly, the language referring to "adults engaged in" sexual activities or sexually suggestive poses is not supported by probable cause.

Pornographic drawings, even of children, are constitutionally protected. *Ferber*, at 764-65 (the distribution of nonobscene descriptions or depictions of sexual conduct not involving live performances or visual reproductions of live

---

[2]This definition is in large part the same as the current statutory definition.

performances retain First Amendment protection). Thus, the State correctly concedes that there was no probable cause to search for drawings. There seems to be nothing in the affidavits considered by the issuing magistrate supporting a search for sexual paraphernalia.

The State also concedes that there is no probable cause to support seizure of evidence of defendant's correspondence with other collectors of child pornography. This concession is in error. The information before the magistrate showed that defendant's name appeared on a list of pedophiles obtained by the Oakland police. The Oakland undercover officer's affidavit described a series of correspondence with defendant regarding sharing or trading child pornography. Defendant delivered 82 films to the officer, and said he had more in California and Seattle, enough to keep the officer "busy for a lifetime". Under these alleged facts, there was probable cause to conclude that defendant violated RCW 9.68A.050, prohibiting possession of material depicting minors in sexually explicit conduct with intent to disseminate, exchange, or sell it. Seizure of evidence of correspondence with other collectors is supported by probable cause.

Aside from these probable cause questions, the State also agrees that the language in the warrant referring to children in "sexually suggestive poses" is insufficiently particular to satisfy the Fourth Amendment requirement. This concession also is appropriate. The definition of sexually explicit conduct in RCW 9.68A.011 is broad. However, a depiction of a child under 16 years of age who is fully clothed, without exhibition of genitals or any of the other conduct described in the statute, could be sexually suggestive.

Taking into account the State's proper concessions, and focusing on the first part of the warrant, which is the critical portion for present purposes, the remaining language authorizes a search for and seizure of "[c]hild . . . pornography; photographs, movies, slides, video tapes, magazines . . . of children . . . engaged in sexual activities . . .." Exhibit 10. We conclude that the term "child . . . pornography", *i.e.*, the

remainder of the first clause, is invalid in the context of the warrant's language as a whole.

Our reasoning is threefold. First, the term "child . . . pornography" is an "omnibus legal description" and is not defined in the statutes. It is a term analogous to "obscenity", and the term "obscenity" is not sufficiently particular to satisfy the Fourth Amendment because it leaves the officer with too much discretion in deciding what to seize under the warrant. *See Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 60 L. Ed. 2d 920, 99 S. Ct. 2319 (1979). Where materials presumptively protected by the First Amendment are concerned, this conclusion is especially fitting. Greater particularity is required where First Amendment considerations are concerned, including allegedly obscene publications and films. *Walthall v. State*, 594 S.W.2d 74, 78, 32 A.L.R.4th 364 (Tex. Crim. App. 1980). In *United States v. Guarino*, 729 F.2d 864, 867 (1st Cir. 1984), the court reasoned that telling the officers to seize anything which meets the omnibus legal description of obscenity is not "scrupulous exactitude". Similarly, a description authorizing seizure of anything which the officer thinks constitutes "child pornography" leaves the executing officer with too much discretion, and is not "scrupulous exactitude".

Second, as discussed above, a general description may be appropriate in some circumstances. However, as noted, courts often reason that if a more particular description can be made at the time the warrant is issued, a general description is insufficiently particular. The term "child . . . pornography" is a broad description of the type of materials sought, perhaps as broad as can be made while not departing from any description at all of the nature of the materials sought.

Defendant maintains that the language of RCW 9.68A-.011, if used in a search warrant to describe materials sought, would be sufficiently particular.[3] This is so, and serves to

---

[3] The Legislature expressly defined illegal conduct in RCW 9.68A.011 having in mind the protection of children from sexual exploitation without infringing on constitutionally protected activity. *See* RCW 9.68A.001.

show that at the time this warrant was issued, greater particularity as to the type of material sought could easily have been employed.[4]

In this regard, the particularity requirement is not somehow eliminated because the search is aimed at material falling into a general category, rather than specifically identified, by title for example. Where a general category of illegal materials is involved, *e.g.*, child pornography or obscenity, a *specific statement* of the type of contents which would render the material child pornography or obscenity may be sufficient. *E.g.*, *United States v. Wiegand*, 812 F.2d 1239, 1243 (9th Cir.) (where warrant describes material sought in graphic terms of statute on sexual exploitation of children, description is sufficiently particular), *cert. denied*, 484 U.S. 856 (1987); *see United States v. Dornhofer*, 859 F.2d 1195, 1198 (4th Cir. 1988), *cert. denied*, 490 U.S. 1005 (1989); *cf. In re Search of Kitty's East*, 905 F.2d 1367, 1372-73 (10th Cir. 1990) (describing in detail contents of obscene videotapes); *see generally* 2 W. LaFave § 4.6(e), at 257 & n.100 (and cases cited therein). Merely because a type, as opposed to a specifically identifiable piece, of child pornography is sought does not mean that a particularized description is "unnecessary" or "often impossible" as the State contends. Despite some broad language in *State v. Withers*, 8 Wn. App. 123, 504 P.2d 1151 (1972), upon which the State relies, that opinion is not to the contrary. The court said that "if the purpose of a search is to seize any property of a specified character, a particularized description is unnecessary and often impossible." *Withers*, at 127 (without citation of authority). However, the description in the warrant, " 'merchandise from [the] disabled ship Don Jose' ", was held to satisfy the standard of "reasonable particularity". *Withers*, at 126. Further, the First Amendment was not implicated in *Withers*.

---

[4]In light of our disposition of the issues, we need not adopt the rule suggested by defendant that only a description in the language of the statute, or a description specifically identifying each item sought, for example by title, will suffice.

■ Third, while courts have sometimes held a description of materials sought can be held sufficiently particular given the rest of the warrant's language, such a holding is not appropriate here. The Ninth Circuit has reasoned that "[r]eference to a specific illegal activity can, in appropriate cases, provide substantive guidance for the officer's exercise of discretion in executing the warrant." *United States v. Spilotro*, 800 F.2d 959, 964 (9th Cir. 1986). For example, a search limited to items evidencing "involvement and control of prostitution activity" was held by the Ninth Circuit to satisfy the particularity requirement. *United States v. Washington*, 797 F.2d 1461, 1472 (9th Cir. 1986); *see also, e.g., State v. Lingo*, 32 Wn. App. 638, 649 P.2d 130, *review denied*, 98 Wn.2d 1005 (1982). The analogous argument here would be that even if the term "child . . . pornography" is invalid in and of itself, the presence of the words "child . . . pornography" in the warrant provides substantive guidance for the officer's exercise of discretion.

The problem is, of course, that so much of the rest of the warrant suffers from lack of probable cause and from insufficient particularity. It is simply too much to believe that a term overly general in itself can provide substantive guidance for the exercise of discretion in executing a warrant otherwise riddled with invalidities.

Finally, none of the cases cited in *Spilotro* for the proposition that a general description of the illegal activity may "save" descriptions of items to be seized involve materials presumptively protected under the First Amendment. *See Spilotro*, at 964-65 (and cases cited therein).

We conclude that the term "child . . . pornography" in the warrant is invalid because it is insufficiently particular to satisfy the Fourth Amendment.

What is finally left of the key first clauses of the warrant, then, is the following: "photographs, movies, slides, video tapes, [or] magazines . . . of children . . . engaged in sexual activities . . .." Exhibit 10.

The State contends that this portion of the warrant sufficiently describes seizable items, and that this language

should be severed from invalid portions of the warrant. We disagree. While we agree with the principle that the severability doctrine may save parts of a warrant containing insufficient descriptions of things to be seized, the doctrine is inapplicable in this case.

Under the severability doctrine, "infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant" but does not require suppression of anything seized pursuant to valid parts of the warrant. *United States v. Fitzgerald*, 724 F.2d 633, 637 (8th Cir. 1983), *cert. denied*, 466 U.S. 950 (1984); *see State v. Cockrell*, 102 Wn.2d 561, 570-71, 689 P.2d 32 (1984) (severability doctrine applied to permit severability of parts of warrant describing particular places to be searched, where there was insufficient probable cause to search those places); *Commonwealth v. Lett*, 393 Mass. 141, 470 N.E.2d 110 (1984). This doctrine has been applied where First Amendment considerations exist. For example, in the leading case on the partial invalidity-partial suppression question, the warrant properly described two obscene books by name but improperly described other items. *Aday v. Superior Court*, 55 Cal. 2d 789, 362 P.2d 47, 13 Cal. Rptr. 415 (1961). The warrant was held valid as to the obscene books, but invalid as to the rest.

The severability doctrine has gained wide acceptance. *See, e.g.*, 2 W. LaFave § 4.6(f), at 258 n.106; 2 W. LaFave, at 37 n.106 (Supp. 1991).

> [I]t would be harsh medicine indeed if a warrant which was issued on probable cause and which did particularly describe certain items were to be invalidated in toto merely because the affiant and magistrate erred in seeking and permitting a search for other items as well.

2 W. LaFave § 4.6(f), at 258.

The severability doctrine does not apply in every case, however. Where a search warrant is found to be an unconstitutional general warrant, the invalidity due to unlimited language of the warrant taints all items seized without regard to whether they were specifically named in the war-

rant. *Kinsey v. State*, 602 P.2d 240, 243 (Okla. Crim. App. 1979); *see United States v. Christine*, 687 F.2d 749, 754, 69 A.L.R. Fed. 503 (3d Cir. 1982) ("[r]edaction is inappropriate when the valid portions of the warrant may not be meaningfully severable from the warrant as a whole"); *United States v. Giresi*, 488 F. Supp. 445, 459 (D.N.J. 1980) (severance improper when warrant is "facially general"). Courts have also reasoned that "severance is not available when the valid portion of the warrant is 'a relatively insignificant part' of an otherwise invalid search." *In re Grand Jury Subpoenas Dated December 10,* 926 F.2d 847, 858 (9th Cir. 1991); *Aday*, at 797.

There has been criticism, however, that courts have not set forth specific guidelines to govern when severance, or redaction, should be applied. *E.g.*, Comment, *Redaction — The Alternative to the Total Suppression of Evidence Seized Pursuant to a Partially Invalid Search Warrant*, 57 Temp. L.Q. 77, 91-92 (1984). However, further development in the way of guidelines may be discouraged as a result of the decision in *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, *reh'g denied*, 468 U.S. 1250, 82 L. Ed. 2d 942, 105 S. Ct. 52 (1984), where the Court adopted a good faith exception to the exclusionary rule for search warrant cases. Under *Leon*, "exclusion of presumptively illegally obtained evidence is no longer mandated as a Fourth Amendment matter if the officer had 'reasonable grounds for believing that the warrant was properly issued.'" 2 W. LaFave § 4.6, at 234. "[U]nder *Leon* suppression is required because of a particularity defect only if the warrant was 'so facially deficient — i.e., in failing to particularize the place to be searched or the things to be seized — that the executing officer cannot reasonably presume it to be valid.'" 2 W. LaFave § 4.6, at 234 (quoting *Leon*, at 923).

While the "good faith" issue addressed in *Leon* has not been raised here,[5] that case and its progeny have altered

---

[5]Although the issues presented to this court concern the Fourth Amendment, and defendant does not claim a different standard applies under the state

the analysis employed by courts determining whether under the Fourth Amendment evidence seized under a partially invalid search warrant must be suppressed. Severance, or redaction, is not so much the question under *Leon* as whether the warrant is facially invalid in its entirety, and whether the executing officers acted in good faith.

 In that we do not address any possible "good faith" issue, we address the severance question and explain why it is inapplicable here. The doctrine must not be applied where to do so would render meaningless the standards of particularity which ensure the avoidance of general searches and the controlled exercise of discretion by the executing officer. "The doctrine of severability should not be allowed to become a means for defeating the particularity requirement." *State v. Noll*, 116 Wis. 443, 456, 343 N.W.2d 391, *cert. denied*, 469 U.S. 837 (1984). As must be evident from the discussion above, an extraordinary amount of selective sorting through the 24 words of the first two clauses of the warrant is required before the remainder, which the State argues is valid, can even be examined for the requisite particularity. Some items described are without probable cause and no degree of particularity will save them; other items are insufficiently described.

The warrant is overbroad and lacking in the requisite particularity throughout the first two clauses to such an extent that applying the severance doctrine would be utterly

---

constitution than applies under the federal constitution, the State has not relied upon the "good faith" exception. Where the State does rely on the exception, it has the burden of proving that the officers' reliance on the warrant was objectively reasonable; the defendant need not prove bad faith. *See United States v. Michaelian*, 803 F.2d 1042, 1048 (9th Cir. 1986). Because the State has not relied on the exception, it has not attempted to meet this burden. Under these circumstances, we decline to address the issue sua sponte. We note that twice before we have not found it necessary to reach the good faith issue as it relates to search warrants. *State v. Huft*, 106 Wn.2d 206, 212, 720 P.2d 838 (1986) (facts in search warrant did not establish probable cause to support search); *State v. Canady*, 116 Wn.2d 853, 809 P.2d 203 (1991) (warrant defective because court lacked jurisdiction). The Court of Appeals has indicated acceptance of the "good faith" exception in dicta in *State v. Salazar*, 59 Wn. App. 202, 208, 796 P.2d 773 (1990).

inconsistent with the protections afforded by the Fourth Amendment. It is an overbroad warrant vesting too much discretion in the executing officers, and is so broad as to authorize a general search of materials protected by the First Amendment. The executing officers could rummage through virtually all of defendant's possessions with absolutely no meaningful guidelines as to what was seizable.

The Seattle vice detective testified that she believed she had discretion to seize drawings of adults in sexually suggestive positions, to seize photographs of couples in sexual activity, and to seize photographs of children in sexually active positions. Verbatim Report of Proceedings (Mar. 2, 1989), at 41. She testified she had no direction from the issuing magistrate as to anything which would differentiate between the authority to seize materials depicting adults in sexual activities and children in sexual activities. Verbatim Report of Proceedings (Mar. 2, 1989), at 41. She seized films on the basis of neutral titles where nothing about the container or canister indicated the contents, on the basis she believed they were within the scope of the warrant. Verbatim Report of Proceedings (Mar. 2, 1989), at 83-85, 92. She seized a VHS cassette which had the title "Down and Out in Beverly Hills" and a description of the movie and a picture of two police officers on the cover. Verbatim Report of Proceedings (Mar. 2, 1989), at 93-94. The officer testified she had seen the movie, and recalled that it contained adults engaged in sexual activity but did not recall any such activity involving children. Verbatim Report of Proceedings (Mar. 2, 1989), at 95. The vice detective's testimony shows she believed children to mean persons under 18. Verbatim Report of Proceedings (Mar. 2, 1989), at 96-97. She testified that a picture on a film cover of a young female portrayed from the top of the breasts up was sexually suggestive. Verbatim Report of Proceedings (Mar. 2, 1989), at 104-06.

The officer's testimony demonstrates the extraordinary amount of discretion exercised in seizing materials from defendant's extensive library. The warrant's language did not limit that exercise of discretion so as to prevent a whole-

sale rummaging through defendant's residence and library. The warrant authorized the seizure of many lawful materials — which in no way fit the statutory categories of child pornography.

In order to apply the severability doctrine, moreover, there must be a meaningful separation to be made of the language in the warrant. *See, e.g., United States v. Christine, supra* at 758 (referring to valid severable phrases or clauses). That is, because warrants are to be read in a "commonsense and realistic fashion", *United States v. Ventresca*, 380 U.S. 102, 108, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965), there must be some logical and reasonable basis for the division of the warrant into parts which may be examined for severability. Short of first deciding the validity of each word in the warrant, as we have done here, there is no logical way to divide the parts of this warrant. It is strictly a pick and choose endeavor.[6]

*At a minimum*, where materials presumptively protected by the First Amendment are concerned, the severance doctrine should only be applied where discrete parts of the warrant may be severed, and should not be applied where extensive "editing" throughout the clauses of the warrant is required to obtain potentially valid parts. The substantial editing required here to reach the point at

---

[6]Defendant argues that the word "or" used in the warrant provides a dividing point each time it is used, and provides a means of severing the parts of the warrant. Defendant relies on *United States v. Diamond*, 820 F.2d 10, 11 (1st Cir. 1987), where the warrant authorized the seizure of videotapes " 'depicting prepubescent children or children under the age of 18 years involved in sexually explicit conduct.' " The court held that the warrant's description of "prepubescent children" provided a sufficient description, and therefore did not decide whether the language referring to "children under the age of 18 years" was sufficient to provide an objective standard for police officers to follow. *Diamond*, at 12.

The redaction suggested in *Diamond* does not approach that required here. Further, even if we were inclined to focus on the "ors", it is apparent that even a cursory examination of the warrant here shows that the "ors" cannot be used as markers to chop invalid parts from valid descriptions: "Child *or* adult pornography; photographs, movies, slides, video tapes, magazines *or* drawings of children *or* adults engaged in sexual activities *or* sexually suggestive poses . . .." Exhibit 10. More editing is required than taking a phrase from one side of an "or".

which the State urges us to test the particularity of this warrant is flatly inconsistent with the mandate from *Stanford v. Texas*, 379 U.S. 476, 485, 13 L. Ed. 2d 431, 85 S. Ct. 506, *reh'g denied*, 380 U.S. 926, 13 L. Ed. 2d 813, 85 S. Ct. 879 (1965): the

> constitutional requirement that warrants must particularly describe the "things to be seized" is to be accorded the most scrupulous exactitude when the "things" are books, and the basis for their seizure is the ideas which they contain. . . . No less a standard could be faithful to First Amendment freedoms.

(Footnote and citations omitted.)

We uphold the trial court's determination that the warrant is overbroad and invalid in its entirety. We decline to apply the severance doctrine in this case. We emphasize that the State has not raised a "good faith" issue, *see United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, *reh'g denied*, 468 U.S. 1250, 82 L. Ed. 2d 942, 105 S. Ct. 52 (1984), nor has any argument been made respecting whether a different standard applies under the state constitution than applies under the federal constitution.

Our decision here is founded on the fundamental protections afforded by the First and Fourth Amendments.

Crimes involving child pornography are especially repugnant because of the harm to children necessarily involved. It would not have been difficult in this case to have drafted a search warrant that would have satisfied the probable cause and particularity requirements of the Fourth Amendment. It is unfortunate that this was not done.

Finally, defendant argues that the term "sexual activities" is insufficiently particular. In light of our holding above, we need not decide this question, as we decline to apply the severance doctrine here. Nonetheless, there is some merit to defendant's contention. The phrase "sexual activities" differs from the statutory requirement of "sexually explicit conduct", and is clearly not as detailed as the definition of "sexually explicit conduct" in former RCW 9.68A.011. Defendant maintains that the phrase "sexual activities" is vague and open ended.

The statutes require "sexually *explicit* conduct". Explicit is defined as "characterized by full clear expression : being without vagueness or ambiguity : leaving nothing implied : UNEQUIVOCAL" and "externally visible : clearly observable" with synonyms listed as "definite, specific, express, categorical". *Webster's Third New International Dictionary* 801 (1981). There appears to be a significant difference between the terms "sexual activities" and "sexually explicit conduct".

In *United States v. Hale*, 784 F.2d 1465 (9th Cir.), *cert. denied*, 479 U.S. 829 (1986), the court held the following language too general to support material which, at the time of the seizure, was arguably protected by the First Amendment: "any other books, magazines, photographs, negatives, or films depicting obscene, lewd, lascivious or indecent sexual conduct". *Hale*, at 1468. In *United States v. Hurt*, 795 F.2d 765 (9th Cir. 1986), *modified*, 808 F.2d 707 (9th Cir.), *cert. denied*, 484 U.S. 816 (1987), the court found *Hale* distinguishable, and held that the language in a search warrant authorizing a search for "[b]ooks, magazines, photographs, negatives, films and video tapes depicting minors (that is, persons under the age of 16) engaged in sexually explicit conduct" was sufficiently particular. *Hurt*, at 772.

The Court of Appeals' majority in this case said that the language in the search warrant was like that in *Hurt* rather than that in *Hale*. Contrary to that court's conclusion, we conclude the language in *Hurt* is significantly different from the language in the warrant here in the same way that the language in the relevant statutes is different.

The Court of Appeals is reversed. This case is remanded to the trial court for further proceedings consistent with this opinion.

DORE, C.J., and UTTER, DOLLIVER, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.