**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53383-9-II |
| Appellant, | |
| v. | |
| ARTHUR S. DURONE, | UNPUBLISHED OPINION |
| Respondent. | |

GLASGOW, J.—During an inventory search of Arthur S. Durone's truck, an officer observed firearms and a pipe containing what he believed to be a controlled substance. Before seizing any items, the officer applied for and received a search warrant, which authorized him to search the entire vehicle and to seize "all items of evidence of the crime(s)" of "Possession of a Controlled Substance," "Possession of Drug Paraphernalia," and "Felon in Possession of a Firearm."[1] Pursuant to the warrant, the officer recovered controlled substances and multiple firearms from Durone's truck.

Durone challenged the search warrant in a CrR 3.6 motion, arguing that it violated the particularity requirement of the Fourth Amendment to the United States Constitution. The trial court agreed, finding that the warrant lacked particularity because it failed to specify any items to be seized. The trial court suppressed all evidence seized pursuant to the warrant and then found

---

[1] Clerk's Papers (CP) at 22. The warrant was issued before the Washington Supreme Court decided *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021), invalidating the statute establishing felony unlawful possession of a controlled substance.

the State's case effectively terminated. It also orally denied the State's motion for reconsideration. The State appeals the trial court's order granting the motion to suppress and its denial of the motion for reconsideration.

We hold that the warrant was overbroad and violated the Fourth Amendment's particularity requirement because it failed to list any particular items to be seized. Some description of the items that may be seized is necessary to guide the executing officer's discretion and to inform the person subject to the search of what items could be seized.

We affirm the trial court's order suppressing all evidence seized pursuant to the overbroad warrant and affirm the trial court's order finding the State's case effectively terminated. We do not reach the trial court's denial of the State's motion for reconsideration.

FACTS

In December 2018, Washington State Patrol Trooper Blake Willson pulled over Durone for speeding. Durone's Oregon driver's license was suspended, and he did not have a valid Washington driver's license, so Willson did not permit Durone to continue driving after the stop. Durone was unable to find anyone who could pick up his truck, so Willson conducted an inventory search in preparation for a tow. During the inventory search, Willson observed firearms, which must be promptly removed from a vehicle that will be towed under Washington State Patrol policy. When he went to retrieve the firearms, Willson saw "a clear cylindrical glass smoking device" that he recognized as "a pipe used in the consuming of illegal substances." CP at 18. Willson "immediately ceased the vehicle inventory," without seizing the firearms or the pipe, handcuffed Durone, and advised him of his rights. *Id.* He asked Durone for consent to search the truck, but Durone refused.

A.     Search Warrant

Willson then applied for a warrant to search the truck. In his declaration in support of the search warrant, Willson summarized the traffic stop, including that he "observed firearms" in the truck and that when he went to retrieve those firearms, he "observed a clear, glass cylindrical smoking device" containing what he "believed to be an illegal substance." CP at 21. Willson "recognized the glass device as a device used in smoking illegal substances, based on [his] training and experience." *Id.* Willson's declaration also explained that after arresting Durone, Willson checked with Washington State Patrol communications and discovered that due to a prior felony conviction, Durone was not permitted to possess any firearms. Willson specified the items to be searched for as "[e]vidence of the crime(s) of: 1. Possession of a Controlled Substance 2. Possession of Drug Paraphernalia 3. Felon in Possession of a Firearm." *Id.*

A district court judge found:

[T]here is probable cause to believe that evidence of the crime(s) listed below is present in the item/place to be searched, and that grounds for the issuance of a search warrant exist, specifically for the crimes of:

1.  Possession of a Controlled Substance
2.  Possession of Drug Paraphernalia
3.  Felon in Possession of a Firearm.

CP at 22. The warrant directed law enforcement to:

1.  Search: *the aforementioned vehicle in its entirety, from the top of the roof, to the bottom of the tires, from the very front of the front bumper, to the very rear of the rear bumper, all voids and recesses.*
2.  Seize all items of evidence of the crime(s) listed above.

*Id.* Although the warrant stated that there was probable cause based on Willson's declaration "filed herewith," nothing in the warrant expressly incorporated the declaration by reference. *Id.* Moreover, possession of drug paraphernalia is not, by itself, a crime under state law.

Willson executed the warrant and recovered approximately 204 grams of suspected marijuana in a baggie, approximately 110 grams of suspected marijuana rolled in paper in a second baggie, approximately 124 grams of suspected marijuana in a third baggie, and approximately 26 grams of suspected cocaine in a small baggie in a tin can. He also recovered the glass smoking device, "a clear glass mason jar with amber wax substance," and four firearms. CP at 5. The State charged Durone with possession of over 40 grams of marijuana, possession of cocaine, and second degree unlawful possession of a firearm.

Durone filed a CrR 3.6 motion to suppress the evidence found in his car. He conceded there was probable cause to support the search, but he argued the search warrant was "overbroad in that it failed to specify anything that was to be searched for and seized from the vehicle." CP at 10. The State responded that "the items to be seized were clearly controlled substances, firearms, and drug paraphernalia using commonsense." CP at 29. Durone agreed that had the warrant listed "'[f]irearms, ammunition, drug paraphernalia, [and] drugs'" as the items to be seized, that would have been sufficient, but he asserted that the failure to list these items, and the decision to instead only identify the crimes under investigation, meant the warrant lacked particularity. Verbatim Report of Proceedings (VRP) (May 10, 2019) at 14.

The State highlighted that "Willson could have seized the firearms as part of the inventory, and the pipe, containing what was evident to him as illegal controlled substances, in plain view. Instead, . . . Willson backed out, sought, and received approval from a neutral magistrate before collecting the evidence of the recently discovered crimes." CP at 30.

After a hearing, the trial court granted Durone's motion to suppress. Applying *State v. Higgins*, 136 Wn. App. 87, 147 P.3d 649 (2006), the trial court concluded there was probable cause

4

to seize all of the firearms "as they were visible" during the stop, but there was not probable cause to seize evidence of "any controlled substance crimes because the only reference to anything related to controlled substances in the affidavit was mention of a glass smoking device" and the warrant "never established what was to be searched for." CP at 41.

The trial court found that the warrant failed to set objective standards and "left to the officer's sole discretion what constituted 'evidence of a crime' without any specificity or limitation." CP at 42. The trial court also determined that the items to be searched for and seized could have been described "more particularly in light of the information available," and it provided as examples the descriptions of "'firearms and ammunition'" and "'controlled substances and drug paraphernalia.'" *Id.* Ultimately, the trial court concluded that the warrant "failed to specify the items the officer was to search for or seize, even in broad or general categories or terms" and, therefore, the language "lacked particularity." CP at 41. The trial court deemed the warrant overbroad and suppressed all evidence seized pursuant to the warrant.

The trial court also entered an order finding that "by suppressing the evidence obtained pursuant to the search warrant, the practical effect is to terminate the [State's] case." CP at 114.

B.    Motion for Reconsideration

The State filed a motion for reconsideration. In addition to arguing that the trial court misapplied the law when it suppressed evidence from the search, the motion argued that even if the trial court maintained its decision that the warrant was overbroad, the firearms and the controlled substance from the pipe should still be admissible against Durone. The State admitted that all of the evidence was seized when Willson executed the warrant, but it argued that "[t]he

State should be allowed to proceed with the evidence [Willson] *could have* lawfully seized without a warrant." CP at 61 (emphasis added).

The trial court did not rule on the merits of the State's motion for reconsideration. Instead, the trial court stated on the record that the parties and the court would have only "two days to handle this" before Durone's trial needed to begin, and then the court orally denied the State's motion as untimely. VRP (May 23, 2019) at 45. The trial court did not enter a written order denying the motion.

The State appeals the order suppressing evidence and the ruling denying reconsideration.

ANALYSIS

The State argues that the search warrant satisfied the Fourth Amendment's particularity requirement even though it "lacked a list of items a law enforcement officer could search for and seize," because "[t]he [possession] crimes listed are in themselves sufficiently narrow." Br. of Appellant at 17, 20. We disagree and hold that a search warrant must list the particular items to be searched for and seized, even when the crimes being investigated are crimes of unlawful possession.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing* the place to be searched, and the persons or *things to be seized*." U.S. CONST. amend. IV (emphasis added). A warrant serves two purposes: "to limit the executing officer's discretion" and "to inform the person subject to the search what items the officer may seize." *State v. Riley*, 121 Wn.2d 22, 29, 846 P.2d 1365 (1993). To effectively serve these purposes, a search warrant must describe the places to be searched and the things to be seized with "'reasonable particularity.'" *State v. Withers*, 8 Wn. App. 123, 126,

6

504 P.2d 1151 (1972). "The purpose of the particularity requirement is to prevent the State from engaging in unrestricted 'exploratory rummaging in a person's belongings' for any evidence of any crime." *State v. Askham*, 120 Wn. App. 872, 878, 86 P.3d 1224 (2004) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971)).

"A search warrant's description of the . . . property to be seized is sufficiently particular if 'it is as specific as the circumstances and the nature of the activity under investigation permit.'" *State v. Vance*, 9 Wn. App. 2d 357, 363, 444 P.3d 1214 (2019) (quoting *State v. Perrone*, 119 Wn.2d 538, 547, 834 P.2d 611 (1992)), *review denied*, 194 Wn.2d 1016 (2020). To determine whether a warrant's description is sufficiently particular, we ask "'whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not.'" *Higgins*, 136 Wn. App. at 91 (internal quotation marks omitted) (quoting *United States v. Mann*, 389 F.3d 869, 878 (9th Cir. 2004)). We also ask "'whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.'" *Id.* at 91-92 (internal quotation marks omitted) (quoting *Mann*, 389 F.3d at 878). Where a warrant is overbroad, the supporting affidavit may cure the defect only if it is "physically attached, and the warrant expressly refers to the affidavit and incorporates it with 'suitable words of reference.'" *Riley*, 121 Wn.2d at 29 (quoting *Bloom v. State*, 283 So.2d 134, 136 (Fla. Dist. Ct. App. 1973)).

"[T]he presumptive rule against warrantless searches applies with equal force to searches whose only defect is a lack of particularity in the warrant." *Groh v. Ramirez*, 540 U.S. 551, 559, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004). "Neither the officer's personal knowledge of the crime nor a proper execution of the search may cure an overbroad warrant." *Higgins*, 136 Wn. App. at

91. We review de novo "[w]hether a search warrant contains a sufficiently particularized description." *Perrone*, 119 Wn.2d at 549.

It is necessary to limit the scope of the search by reference to the crime or crimes under investigation. *Compare United States v. Stefonek*, 179 F.3d 1030, 1032-33 (7th Cir. 1999) (holding that an authorization to seize any "'evidence of crime'" does not satisfy the particularity requirement) *with Andresen v. Maryland*, 427 U.S. 463, 479-81, 96 S. Ct. 2737, 49 L. Ed. 2d 627 (1976) (permitting a search for "'evidence of crime'" where it is "clear from the context that the term 'crime' in the warrants refers only to the crime of false pretenses with respect to [a specific land sale]"). But this specification alone is not sufficient to satisfy the particularity requirement.

The scope of a search warrant should be limited by reference to the crimes under investigation *and* a list of specific items that may be relevant to the investigation. In *State v. Reid*, for example, the warrant authorized a search for "'a shotgun, ammunition for the shotgun, a dark leather or vinyl jacket, a pillowcase or other [bed linen] with a pattern of daisies, leaves, and strawberries on it, nitrates, and any other evidence of the homicide.'" 38 Wn. App. 203, 211, 687 P.2d 861 (1984). The defendant argued the last phrase, "'any other evidence of the homicide,'" enabled an impermissible "'general'" search, but Division One determined that this phrase "specifically limited the warrant to the crime under investigation" *and* "[t]he specific items listed, such as a shotgun and shotgun shells, also provided guidelines for the officers conducting the search." *Id.* at 212. The court concluded that "these limitations were adequate." *Id.*

Similarly, in *State v. Lingo*, the warrant authorized a search for "'any and all evidence of assault and rape including but not limited to bedding, clothing, female clothing, blood stains, semen stains, and residue or other residue of sexual activity; human hair and any and all weapons

that may have been used in the commission of said crimes.'" 32 Wn. App. 638, 640, 649 P.2d 130 (1982). This court concluded that the warrant was sufficiently particular because "[t]he wording 'any and all evidence' was specifically limited to the crimes of assault and rape" *and* "additional restrictions were incorporated in the warrant by the listing of possible items such as female clothing, bedding and blood and semen stains." *Id.* at 642. This list of possible items "provided guidelines for the officers conducting the search." *Id.*

In contrast, in *Higgins* we held that a search warrant was overbroad where officers heard gunfire after a domestic dispute and obtained a warrant "authorizing seizure of 'certain evidence of a crime, to-wit: "Assault 2nd DV" RCW 9A.36.021.'" 136 Wn. App. at 90. We explained that this warrant was overbroad because it "in no way limited the search to illicit items," and it "contained no list of examples to guide the search." *Id.* at 94. The officer's supporting affidavit had "establish[ed] probable cause to search for 'a Glock pistol, unknown serial number or caliber; a spent casing, bullets, and an entry and possibly exit point where the bullet struck.'" *Id.* at 90. "The warrant could easily have specified" the items listed in the officer's affidavit, "rather than the general description" of evidence of second degree assault, but it failed to do so. *Id.* at 92.

It is true that "[a] lesser degree of precision may satisfy the particularity requirement when a warrant authorizes the search for contraband or inherently illicit property." *State v. Chambers*, 88 Wn. App. 640, 644, 945 P.2d 1172 (1997). This is because where officers are searching for "a specific item of property," that item "should be described in the warrant with sufficient particularity to preclude an officer from seizing the wrong property," but where officers are searching for "any property of a specified character, a particularized description is unnecessary and often impossible." *Withers*, 8 Wn. App. at 127.

9

For example, where the person whose property is being searched has previously been convicted of a felony offense, a warrant authorizing a search for any and all firearms is sufficiently particular because any and all firearms in that person's possession are contraband. *See United States v. Pulliam*, 748 F.3d 967, 972 (10th Cir. 2014) ("Since [the defendant] was a felon . . . any guns in his possession were contraband. No specific description of a gun was necessary."). The warrant does not need to list every possible make and model of firearm that could be seized. The warrant does, however, need to specifically designate firearms as the items to be seized.

Here, the search warrant authorized officers to search for and seize "all items of evidence of the crime(s)" of "Possession of a Controlled Substance," "Possession of Drug Paraphernalia," and "Felon in Possession of a Firearm." CP at 22. These descriptions of the crimes under investigation were copied directly from Willson's declaration. The warrant did not expand upon the descriptions or include any statutory citations. Nor did the warrant exclude the reference to possession of drug paraphernalia, which, even at the time the warrant was issued, was not a crime under state law.[2]

---

[2] After *Blake* was decided, Durone filed a supplemental brief in which he argues that the Supreme Court's decision invalidating Washington's strict liability drug possession statute, former RCW 69.50.4013(1), undermined the validity of the warrant issued in this case. However, a declaration that a statute or ordinance is unconstitutional does not necessarily invalidate an earlier determination that there was probable cause that a person had violated the statute or ordinance. *See Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979). The United States Supreme Court has indicated that unconstitutionality of a law would not invalidate a prior determination of probable cause, except possibly when the law was "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *Id.* at 38. The Washington Supreme Court has added that a prior determination of probable cause would be invalidated where "substantially the same" statutory language had been invalidated before the determination of probable cause. *State v. White*, 97 Wn.2d 92, 103, 640 P.2d 1061 (1982), *superseded by statute as recognized in State v. Graham*, 130 Wn.2d 711, 716 n.2, 927 P.2d 227 (1996).

More concerning, the warrant did not list any particular items that would be subject to search and seizure, even in broad categorical terms. The State relies on *Chambers* to argue that the warrant here was sufficiently particular. Although the warrant in *Chambers* authorized a broad search for contraband, it expressly listed "weapons and ammunition" and "indicia of ownership or dominion and control" as items to search for. 88 Wn. App. at 642. It also included subparagraphs describing "the items subject to seizure" and explaining the "necessary proof of the crime under investigation." *Id.* at 646. None of that detail was present here.

The warrant here more closely resembled the overbroad warrant in *Higgins*, which authorized a general search for "'evidence of a crime'" and "contained no list of examples to guide the search." 136 Wn. App. at 90, 94. *Higgins* requires warrants to contain objective standards for executing officers to differentiate between items that are and are not subject to seizure. *Id.* at 91. But here, the determination of what items constituted "evidence of" the designated crimes was left entirely to the executing officer's discretion, defeating a key purpose of the warrant requirement.

Additionally, the warrant could have easily "'describe[d] the items more particularly in light of the information available . . . at the time the warrant was issued.'" *Id.* at 91-92 (quoting *Mann*, 389 F.3d at 878). Willson detailed specific firearms in his declaration. The warrant could have repeated this description, or it could have incorporated Willson's declaration by reference. The warrant could even have described the evidence more particularly by using broad terms, such

_____

Here, former RCW 69.50.4013(1) was in effect when the warrant was issued in December 2018, and the statute had previously been upheld. *E.g.*, *State v. Bradshaw*, 152 Wn.2d 528, 539, 98 P.3d 1190 (2004). Thus, the officer and the district court were entitled to rely on possession of a controlled substance as a crime when establishing probable cause for the search.

as "weapons and ammunition." Instead, the warrant failed to describe any items at all. We therefore hold that the search warrant violated the Fourth Amendment's particularity requirement.[3]

The State alternatively argues that even if the warrant were overbroad, the State should be permitted to prosecute Durone based on Willson's observations of the firearms during the traffic stop. We disagree.

"Where a search warrant is found to be an unconstitutional general warrant, the invalidity due to unlimited language of the warrant taints all items seized." *Perrone*, 119 Wn.2d at 556. Willson certified that he received the search warrant and that "pursuant to the command therein contained," he searched Durone's truck and seized various controlled substances and four firearms. CP at 23. The warrant was properly found to be unconstitutional because it was insufficiently particular, and its invalidity "taints all items seized." *Perrone*, 119 Wn.2d at 556. Willson's prior observations of the evidence cannot serve as a substitute for the tainted evidence.[4]

## CONCLUSION

We hold that the search warrant violated the Fourth Amendment's particularity requirement and was overbroad. The warrant failed to describe any particular items to be seized and, therefore, it failed to guide the executing officer's discretion and to inform the person subject to the search what items could be seized.

---

[3] We recognize that "[a] warrant can be 'overbroad' *either* because it fails to describe with particularity items for which probable cause exists, *or* because it describes, particularly or otherwise, items for which probable cause does not exist." *State v. Maddox*, 116 Wn. App. 796, 805, 67 P.3d 1135 (2003) (emphasis added) (footnote omitted). Thus, we decline to engage in an extended discussion of probable cause here.

[4] We need not reach the trial court's denial of the State's motion to reconsider as untimely because doing so is not necessary to resolve this case.

No. 53383-9-II

We affirm the trial court's order suppressing all evidence seized pursuant to the warrant and affirm the trial court's order finding the State's case effectively terminated.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Lee, C.J.

Worswick, J.

13